Donn **SCHLEHUSER**, Appellant–
Plaintiff,

v.

**CITY OF SEYMOUR; The Seymour Plan Commission; Board of Zoning Appeals of the City of Seymour; and David L. Stark, in his capacity as Building Commissioner of the City of Seymour, Appellees–Defendants.**

No. 36A01–9510–CV–334.

Court of Appeals of Indiana.

Dec. 31, 1996.

---

William E. Vance, Vance & Phillips, Seymour, for Appellant–Plaintiff.

Jeffrey A. Lewellyn, Montgomery, Elsner & Pardieck, Seymour, for Appellees–Defendants.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In this case we review the authority of a board of zoning appeals to reconsider and revoke an existing variance. Donn Schlehuser initiated this appeal after the Board of Zoning Appeals of the City of Seymour ("BZA") revoked his variances. The appeal involves two related causes of action. In the first, the trial court granted and then rescinded a Temporary Restraining Order that had enjoined the City of Seymour, the Seymour Plan Commission, the BZA and David L. Stark, in his capacity as Building Commissioner of the City of Seymour (collectively, "the City"), from taking any action to revoke Schlehuser's existing variances. In the second action, the trial court denied Schlehuser's writ of certiorari to review the BZA's decision. In both cases, Schlehuser contended that the BZA did not have the authority to revoke his variances.

We affirm in part, reverse in part and remand with instructions.

### ISSUES

Schlehuser presents two issues for our review which we restate as:

1. Whether the trial court abused its discretion when it rescinded the temporary restraining order.

2. Whether the trial court erred when it denied Schlehuser's petition for a writ of certiorari.

### FACTS

In March of 1993, the BZA granted Schlehuser a variance so that he could open an automotive repair shop in a garage on West Jackson Street in Seymour. Later that year, Schlehuser requested another variance to add parking space at South Pine Street for three disabled cars waiting on the delivery of parts, a normal day of customer cars, and a used parts trailer. The BZA granted Schlehuser's request for the second variance.

Approximately one year later, the City of Seymour submitted a petition to the BZA to revoke Schlehuser's variances. The petition alleged a "change in conditions and circumstances" and stated:

a. The number of cars parked for normal daily customers has constantly exceeded the fifteen (15) car limit allowed by the variance, even after repeated notices and warnings to Mr. [Schlehuser] that he was not in compliance.

b. Off-street parking north of Mr. Schlehuser's garage is not allowed by Foster Transformer Company (Seymour Electronics). Permission was never granted by the Company, as presented by Mr. Schlehuser in the original petitions for variance.

c. Customer cars are being parked on a City street right-of-way. Said right-of-way extends to the edge of Mr. Schlehuser's garage.

Record at 39. In response, Schlehuser sought and obtained a temporary restraining order which enjoined authorities from taking action on the petition. The trial court conducted a hearing and on March 6, 1995, rescinded its restraining order. Schlehuser then filed a motion to correct error.

After the BZA had revoked his variances, Schlehuser petitioned the trial court for a writ of certiorari. On June 15, 1995, the court heard oral argument on Schlehuser's motion to correct error and on his petition for a writ of certiorari. No transcript of that hearing exists. On June 30, 1995, the court entered its Findings of Fact, Conclusions of Law and Order, *nunc pro tunc* to March 6, 1995. The court specifically found that the BZA had authority to revoke Schlehuser's variances. It also denied both Schlehuser's motion to correct error and his petition for a writ of certiorari.

Schlehuser appeals from the trial court's rescission of the temporary restraining order and the denial of his petition for a writ of certiorari. The two cases were consolidated for our review.

### DISCUSSION AND DECISION

#### Issue One: Injunctive Relief

The trial court issued a temporary restraining order on October 5, 1994, which

enjoined the City from taking action on a petition to revoke Schlehuser's variances. Schlehuser contends that the trial court abused its discretion when, on March 6, 1995, it declined to make the order permanent. We disagree.

 A prohibitory injunction is an extraordinary equitable remedy which should be granted with caution. *Gaskin v. Beier,* 622 N.E.2d 524, 527 (Ind.Ct.App.1993), *trans. denied.* The burden is on the plaintiff seeking the injunction to demonstrate that certain and irreparable injury would result if the injunction were denied. *Id.* The grant or denial of an injunction is within the discretion of the trial court and will not be overturned unless it is arbitrary or amounts to an abuse of discretion. *Id.*

 On March 6, 1996, when the court rescinded its restraining order, the BZA had not yet considered the petition to revoke Schlehuser's variances. The BZA, after hearing all evidence in this matter, could have denied the petition. Therefore, Schlehuser did not demonstrate that certain and irreparable injury would result if a permanent restraining order were not issued.

The primary role of a trial court in relation to a board of zoning appeals is that of judicial review. We cannot say the court erred when it declined Schlehuser's request to preempt the BZA's consideration of the petition to revoke. Further, we note that after the BZA had acted Schlehuser could have sought to enjoin enforcement of the BZA's revocation of his variances pending judicial review. We find no abuse of discretion in the trial court's rescission of the temporary restraining order.

**Issue Two: Writ of Certiorari**

On May 2, 1995, after the BZA had revoked his variances, Schlehuser filed a petition for a writ of certiorari with the trial court which alleged that (1) the BZA's action was *ultra vires;* (2) the petition to revoke did not comply with the BZA's own rules and procedures; and (3) the action of the BZA violated Schlehuser's constitutional rights. After oral argument, the court denied the petition.[1] The court concluded that the BZA had the power to reconsider and revoke a variance that it had previously issued and that it followed proper procedure in doing so. Schlehuser contends that the trial court erred when it denied his petition for a writ of certiorari. We must agree.

 A variance is described as a dispensation granted to permit a property owner to use his property in a manner forbidden by the zoning ordinance. *Eberhart v. Indiana Waste Sys., Inc.,* 452 N.E.2d 455, 459 (Ind. Ct.App.1983). A zoning board has the power within its discretion to approve or deny a variance from the terms of a zoning ordinance. IND. CODE § 36-7-4-918.4;[2] *Town of Merrillville Bd. of Zoning Appeals v. Public Storage, Inc.,* 568 N.E.2d 1092, 1094 (Ind. Ct.App.1991), *trans. denied.* However, as both parties agree, no statute or ordinance provides that the BZA has the authority to *revoke* a previously issued variance. Whether a board of zoning appeals has the power to

---

1. The record does not indicate that the trial court issued an order to the BZA to show cause why the writ should not be granted pursuant to Indiana Code § 36-7-4-1006. However, the BZA filed an "Answer to Writ of Certiorari," in which it merely denied the alleged illegality. Three days later, the court heard oral argument on Schlehuser's petition for a writ of certiorari and his motion to correct error. No exhibit or written testimony was offered into evidence, and there is no transcript of the oral argument. While the court denied the petition for a writ without findings on June 30, 1995, it entered extensive findings of fact and conclusions of law on the petition for an injunction, *nunc pro tunc* to March 6, 1995, in which it effectively addressed the issues raised in Schlehuser's petition.

2. A variance may be approved only upon a determination in writing that:
 (1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;
 (2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;
 (3) the need for the variance arises from some condition peculiar to the property involved;
 (4) the strict application of the terms of the zoning ordinance will constitute an unnecessary hardship if applied to the property for which the variance is sought; and
 (5) the approval does not interfere substantially with the comprehensive plan adopted under the 500 series of this chapter.
 I.C. § 36-7-918.4.

reconsider and revoke a variance absent an express grant of that authority is a matter of first impression in Indiana.

■ In reviewing the action of the BZA, we are bound by the same standard as is the trial court. *See Boffo v. Boone County Bd. of Zoning Appeals,* 421 N.E.2d 1119, 1125 (Ind. Ct.App.1981). The decision of a zoning board should not be reversed unless an error of law is demonstrated. *Holmes v. Board of Zoning Appeals of Jasper County,* 634 N.E.2d 522, 524 (Ind.Ct.App.1994). Absent illegality, this court may not substitute its judgment for that of the BZA. *See id.*

Here, the City relies largely on the Home Rule Act to support its contention that the BZA has the inherent power to revoke an existing variance. *See* IND. CODE §§ 36–1–3–1 to 3–9. The Act states that a "unit" has all powers granted by statute and "all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute." IND. CODE § 36–1–3–4(b). A "unit" is defined as a county, municipality, or township. IND. CODE § 36–1–2–23. The BZA is not a "unit" under the Act but is an administrative agency established under the zoning ordinance adopted by the City of Seymour. *See* IND. CODE § 36–7–4–901.

■ While the City of Seymour has broad power as a "unit," including the residual power to revoke an existing variance under proper circumstances, the municipality must delegate that power to the BZA in an ordinance. IND. CODE § 36–1–3–6(b)(2); IND. CODE § 36–1–3–6(c)(1); *City of Richmond v. S.M.O., Inc.,* 165 Ind.App. 641, 645, 333 N.E.2d 797, 799 (1975) (municipality's residual powers must be exercised by ordinance).[3] While we agree with the trial court that the BZA may revoke a variance previously granted, an ordinance must describe the circumstances under which a variance may be revoked and the manner in which that authority shall be exercised. Thus, the Home Rule Act standing alone, does not support the City's position.

Still, the City insists that the Joint Rules of Procedure adopted by the BZA under authority of the city code prescribe a specific manner for exercising the power to hear and revoke a variance. The rules cited by the City are generic in nature. They describe the time and date of regular and special meetings of the BZA, the procedures to be followed in those meetings, and the requirements for bringing a petition before the BZA. However, they do not provide notice to one seeking a variance or to the public that the variance, if approved, can later be revoked. Nor do they specify the circumstances under which the BZA may revoke a variance.

Revocation is a severe remedy. Specific ordinance provisions are required to ensure that a zoning board does not act arbitrarily and that due process safeguards are followed. This is crucial where vested rights may have been acquired in reliance on the approval of the variance.

The City also directs us to *Easley v. Metropolitan Board of Zoning Appeals of Marion County,* 161 Ind.App. 501, 317 N.E.2d 185 (1974), in which we considered a zoning board's grant of a zoning variance that it had previously denied. We stated that where a board of zoning appeals has specified its reasons for denial of a variance petition, remonstrators could assert a defense "in the nature of res judicata" in a subsequent proceeding unless the petitioner proves that there has been a change in conditions which induced the prior denial. *Id.* at 512–14, 317 N.E.2d at 192–93. We then addressed the type of changes which would justify reconsideration:

"When the facts and circumstances *which activated an order or a decision* are alleged and shown to have so changed as to vitiate or materially affect *the reasons which produced and supported it,* and no

---

**3.** As the author of a leading treatise has explained:

Among the things that a comprehensive zoning ordinance must do in transferring delegated powers of a legislative branch to a zoning board are the establishment of primary standards for carrying out such powers and the requirement of a procedure by appeal, or otherwise, by which both the public interest and private rights shall have due consideration. 1 E.C. YOKLEY, ZONING LAW AND PRACTICE § 7–19, at 284–85 (4th ed. 1978).

vested rights have intervened, it is reasonable and appropriate to the functions of the board that the subject matter be re-examined in the light of the altered circumstances." In other words it is not *any* changed circumstance or condition which will authorize subsequent reconsideration. It must be a change in the particular circumstance or condition which induced the prior denial.

*Id.* at 511, 317 N.E.2d at 191–92 (quoting *St. Patrick's Church Corp. v. Daniels,* 113 Conn. 132, 154 A. 343, 345 (1931)) (emphasis in *Easley* ). *Easley* dealt with a zoning board's approval of a variance that it had previously denied. As already noted, a zoning board has the express power to both approve and deny a variance. I.C. § 36–7–4–918.4. However, the issue here is the authority of the board to revoke a previously granted variance, a power not expressly vested in the BZA, and *Easley* is not controlling.

 The function of a board of zoning appeals is quasi-judicial. Thus, it generally has no inherent power to review and vacate, rescind or alter its decision after it has been made. 3 ZIEGLER, RATHKOPF'S THE LAW OF ZONING AND PLANNING § 37.08, at 37–120 (1996). The powers of the BZA are strictly limited to those granted by its authorizing statute. *See Bradley v. Bankert,* 616 N.E.2d 18, 22 (Ind.Ct.App.1993), *trans. denied.* Any acts of the BZA that exceed the powers enumerated by the Indiana Code and the local zoning ordinance are *ultra vires* and void. *See Anderson Lumber & Supply Co. v. Fletcher,* 228 Ind. 383, 390, 89 N.E.2d 449, 452 (1950); *see also Elkhart County Bd. of Zoning Appeals v. Earthmovers, Inc.,* 631 N.E.2d 927, 929 (Ind.Ct.App.1994), *trans. denied.*

 The authority to revoke a variance is not inherent in the BZA's statutory powers to grant and deny a variance. *See Kethman v. Oceola Township,* 88 Mich.App. 94, 276 N.W.2d 529, 532 (1979) (neither enabling act nor ordinance provided for rehearing of granted variance; township board acted beyond its authority in ordering reconsideration of validity of variance several months after original hearing). However, the BZA is expressly authorized to impose reasonable conditions when it approves a variance. *See* IND. CODE § 36–7–4–918.4. It is implicit that when a variance is issued subject to conditions of approval, the variance can be revoked if the conditions are not met.

 Conditions or restrictions must be clearly stated so that the landowner and his neighbors are not left in doubt as to the nature or extent of the use permitted. *See* 3 ZIEGLER, RATHKOPF'S THE LAW OF ZONING AND PLANNING § 40.03, at 40–7 (1996). Restrictions must also be constitutional and may not themselves exceed the scope of authority delegated to the BZA by the relevant ordinance or statute. *Id.* at 40–6. They should (1) not offend any provision of the zoning ordinance; (2) require no illegal conduct on the part of the permittee; (3) be in the public interest; (4) be reasonably calculated to achieve a legitimate objective of the zoning ordinance; and (5) impose no unnecessary burdens on the landowner. *Id.* at 40–9.

We hold that the BZA had the implied authority to revoke Schlehuser's variances if they were granted subject to reasonable and clearly stated conditions of approval and if Schlehuser then failed to meet those conditions. However, even in this circumstance, Schlehuser was entitled to notice and an opportunity to be heard.

 Given the trial court's denial of Schlehuser's petition for a writ of certiorari, no transcript of the BZA's proceedings was prepared and reviewed by the trial court. Therefore, we are deprived of a record of the BZA hearing at which Schlehuser's variances were revoked, and we are unable to determine from the record whether the BZA exceeded its authority. On these facts, the BZA did not meet its burden to show that a writ should not issue.

Thus, we must remand this case to the trial court with instructions to grant Schlehuser's petition for a writ of certiorari so that a record can be prepared for proper review of the actions taken by the BZA. In reviewing the BZA's actions, the court should determine whether Schlehuser's variances were issued subject to reasonable and clearly stated conditions of approval, whether Schlehuser failed to comply with those conditions,

whether the BZA provided the proper notice and an opportunity to be heard, and whether the BZA made the written findings of fact as required by Indiana Code § 36–7–4–915.

Affirmed in part, reversed in part and remanded with instructions.

SULLIVAN and CHEZEM, JJ., concur.